# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

DAVID DAHMS                                                **PLAINTIFF**

**vs.**                           **CIVIL ACTION NO. 3:18-CV-63**

**CORRECT CARE SOLUTIONS, LLC, et al.,**                  **DEFENDANT**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on motion for summary judgment by Plaintiff, (DN 27), motion for summary judgment by Defendants, (DN 30), and motion to reopen discovery by Plaintiff, (DN 42). For the following reasons, Plaintiff's motion for summary judgment will be DENIED, Defendants' motion for summary judgment will be GRANTED, and Plaintiff's motion to reopen discovery will be DENIED.

### I. Procedural History

David Dahms, a *pro se* plaintiff prisoner, originally brought this action against 18 defendants who were associated with his medical care following a back surgery he received, while incarcerated, on September 20, 2017. (DN 1). Dahms filed his original complaint on January 30, 2018, alleging negligence, intentional infliction of emotional distress/outrage, intentional obstruction/denial of access to the courts, retaliation, and violations of the United States Constitution. (DN 1). "[U]nable to determine what actions Plaintiff alleges each Defendant took or failed to take," the Court permitted Dahms to file an amended complaint prior to conducting its initial review. (DN 6). Dahms filed his amended complaint on May 16, 2018, clarifying his claims and narrowing his list of defendants to seven. (DN 7). After an initial screening by this Court, the only remaining claims are (1) a 42 U.S.C. § 1983 Eighth Amendment claim against Nurse Betsy

Ramey and Dr. Elton Amos, in their individual capacities, and (2) state-law negligence and intentional infliction of emotional distress claims against Nurse Betsy Ramey, Dr. Elton Amos, and Correct Care Solutions, LLC ("Defendants"). (DN 11, p. 4). Plaintiff filed a "motion for summary judgment and motion for settlement conference" on February 8, 2019. (DN 27). In his motion, Plaintiff restates the Eighth Amendment claim from his amended complaint: Defendants' failure to provide Plaintiff the exact medications prescribed by his surgeon amounted to "conduct that was deliberately indifferent to Plaintiff's serious medical need…." (*Id*. at 2). On February 15, 2019, Defendants filed their own motion for summary judgment. (DN 30, p. 15). Regarding Plaintiff's Eighth Amendment claim, Amos and Ramey argue that (1) plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit and (2) "the undisputed facts establish that no reasonable jury could conclude that any defendant acted with the requisite culpable mental state to establish deliberate indifference." (*Id*). In an attempt to excuse his failure to exhaust administrative remedies before filing suit, Plaintiff filed a motion to reopen discovery to obtain evidence that prison officials had implemented a moratorium on answering prisoner complaints during times which Defendant had filed grievances. (DN 42).

## II. Factual Background

Plaintiff alleges, and Defendants do not dispute, that Plaintiff suffered a back injury in November, 2016. (DN 29, p. 1). After the back injury, but before receiving surgery, Plaintiff's prescription medications included: Phenergan (25 mg tablet twice daily); gabapentin (800 mg tablet twice daily); diphenhydramine (25 mg capsule at bedtime); tramadol (two 50 mg tablets as needed three times a day); and duloxetine (20 mg capsule at bedtime). (DN 32, p. 32). On September 19, 2017, Plaintiff "underwent a minimally invasive transforaminal lumbar interbody fusion at L4-5" at the University of Kentucky Medical Center ("UKMC"). (*Id*. at 40). After the

operation, Plaintiff's surgeon, Dr. Raul Vasquez Castellanos, reported that Dahms "tolerated the procedure well and did well post-operatively without any immediate complications." (DN 19-1, p. 1). Dr. Castellanos also recorded that Dahms was "ambulating" and his "pain [was] well controlled" with oral medication. (*Id*.). In his discharge report, Dr. Castellanos noted under the section titled "Medication Instructions" that Plaintiff was to "Take Medication exactly as instructed." (*Id*. at 3). Doctor Castellanos prescribed the following medications: acetaminophen (325 mg - 2 tablets every 4 hours, as needed for a fever or mild pain); diazepam (5 mg – 1 tablet every 4 hours), docusate sodium (100 mg capsule - 2 times a day); gabapentin (300 mg capsule - 3 times a day); oxycodone acetaminophen (every 4 hours, as needed for moderate to severe pain); and senna (17.2 mg tablet – once a day). (DN 19-1, p. 2). Doctor Castellanos further recommended Plaintiff be transferred to a facility with physical therapy services. (DN 19-1, p. 1). Dr. Castellanos reported that Plaintiff "received the full benefit of hospital stay" and that he was "ready for discharge" to the care of Eastern Kentucky Correctional Complex ("EKCC") on September 21, 2017. (DN 19-1, p. 1). On September 22, 2017, at the request of medical staff, prison officials transferred Plaintiff to the Kentucky State Reformatory ("KSR"), a facility with post-surgery physical therapy services. (DN 32, p. 24–28).

While at KSR, prison staff did not provide Dahms with the medications prescribed by Dr. Castellanos. (DN 32, p. 16). Instead, Plaintiff continued receiving his pre-surgery medications, with the exception of duloxetine (cancelled on September 22, 2017). (*Id*.). On September 27, 2017, Plaintiff submitted a sick call request regarding continued post-operative pain to officials at KSR. (DN 32, p. 11). At that time, Plaintiff stated tramadol "provide[d] relief" for his pain, but he was being denied adequate medical care by not receiving additional pain medication. (DN 32,

p. 11).  Plaintiff filed a series of grievances with KSR concerning his allegedly inadequate medical care, starting in October 2017 and continuing through January 2018.

Although Dahms worded each grievance differently, his core complaint was essentially the same[1] as his § 1983 Eighth Amendment claim: (1) Dahms was in continued pain, (2) his pain was a direct result of prison staff not filling the exact prescriptions provided by Dr. Castellanos, and (3) denial of those prescriptions constituted a violation of his rights.   The dates of Dahms' grievances relevant to his § 1983 claim, as well as the dates of final exhaustion, are summarized as follows:

| Grievance number | Date received | Date of final exhaustion | Citation |
|---|---|---|---|
| 17-1154[2] | October 10, 2017 | June 14, 2018 | DN 30-2, p. 65–83 |
| 17-1383 | December 5, 2017 | February 5, 2018 | DN 30-2, p. 20–29 |
| 17-1415 | December 11, 2017 | May 16, 2018 | DN 30-2, p. 30–38 |
| 18-0048 | December 21, 2017 | February 5, 2018 | DN 30-2, p. 40–47 |
| 18-0152 | January 19, 2018 | February 5, 2018 | DN 30-2, p. 48–56 |

## III.  Plaintiff's § 1983 claim

### A.  Exhaustion of administrative remedies

Defendants Ramey and Amos move this Court for summary judgment on Plaintiff's § 1983 claim on the grounds that Dahms failed to exhaust his administrative remedies prior to filing his

---

[1] In addition to the grievances complaining of pain and inadequate medical care, plaintiff filed one grievance, 18-0344, solely to protest that an earlier grievance, 17-1154, had not been resolved.  (DN 30-2, p. 60–64).

[2] After filing Grievance 17-1154 on December 5, 2017, Plaintiff did not receive an answer to his final appeal as quickly as he had anticipated.  (DN 30-2, p. 65–83).  Plaintiff filed Grievance 18-0344 on February 21, 2018 to complain of the prison staff's untimeliness.  (*Id*. at 60).  In response, Dahms was directed to *re*-file Grievance 17-1154 as Grievance 18-0837.  (*Id*. at 66).  Dahms refiled Grievance 17-1154 (now labeled Grievance 18-0837) on May 17, 2018, and the medical director issued a final response on June 14, 2018.  (*Id*. at 71).

original complaint. (DN 30, p. 8). Dahms responds that this Court should excuse his failure to exhaust his administrative remedies because the Grievance Office was in a state of moratorium[3] during the period in which Plaintiff filed grievances. (DN 43, p. 1). Plaintiff's argument is without merit because (1) Plaintiff failed to exhaust his administrative remedies prior to filing this action and (2) a moratorium does not excuse Plaintiff's failure to exhaust his administrative remedies prior to filing suit.

### 1. Legal standard

The Prison Litigation Reform Act ("PLRA") requires that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle,* 534 U.S. 516 (2002); *Booth v. Churner,* 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks through the state administrative process. *See Porter,* 534 U.S. at 520; *Booth,* 532 U.S. at 741. Prisoner grievance procedures under the PLRA provide prison staff with the opportunity to respond to complaints and create an administrative record for the court in the event that a prisoner files a lawsuit. *Jones v. Bock,* 549 U.S. 199, 204 (2007). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218. Exhausting administrative remedies after filing suit is inadequate to survive dismissal

---

[3] If a prison Grievance Coordinator receives a significant number of grievances, he or she may call a "moratorium" on the ordinary time limits for responding to those grievances. Kentucky's Corrections Policies and Procedures, 14.6 II.F. "If a moratorium on time limits is called, the affected grievances shall be processed within a reasonable time given the other duties of the staff involved and the affected grievants shall be notified in writing." (*Id.*).

under the PLRA.  *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.").

### 2.  Failure to exhaust administrative remedies

Defendant did not exhaust his administrative remedies, as required by the PLRA, before filing suit.  Dahms filed five grievances with Kentucky's Department of Corrections alleging that he was constitutionally entitled to receive the medications prescribed by Dr. Castellanos.  Dahms filed the earliest of these grievances, Grievance 17-1154, on October 10, 2017 and the latest of these grievances, Grievance 18-0152, on January 19, 2018.  Mr. Dahms did not exhaust his final administrative remedy (for Grievance 17-1154) until June 14, 2018—almost five months after filing his original complaint.  The PLRA mandates that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a).  Therefore, the remaining question before the court is whether administrative remedies were "available" to Dahms or if circumstances otherwise excuse Dahms from meeting the PLRA's failure-to-exhaust requirement.

### 3.  Excuses for failure to exhaust administrative remedies

Because Dahms failed to exhaust his administrative remedies before filing his complaint, and Defendants pled failure to exhaust administrative remedies as an affirmative defense, Dahms' suit can only proceed if circumstances excuse his premature filing.  *See Jones v. Bock*, 549 U.S. 199, 211, 127 S. Ct. 910, 918 (2007); *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).  The Supreme Court has identified three circumstances in which an administrative remedy is "unavailable" to a plaintiff, effectively excusing the exhaustion requirement: first, when prison "officers [are] unable or consistently unwilling to provide any relief;" second, when a grievance

process is "so opaque" that it is "incapable of use;" and third, when prison officers "thwart inmates from taking advantage of a grievance process." *Id*. at 1859–60. Additionally, the Sixth Circuit has held that plaintiffs may add newly-exhausted claims to an amended complaint when the original complaint was filed with at least one properly exhausted claim. *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017). None of the exceptions to the PLRA's exhaustion requirement apply to Dahms.

First, prison officials were not "unable or consistently unwilling to provide *any* relief" to Mr. Dahms. *Ross*, 136 S. Ct. at 1859. Although prison officials were unwilling to provide the *specific* relief sought (i.e. the exact medications prescribed by Dr. Castellanos), they provided alternative pain medication that, in Plaintiff's own words, "provide[d] relief." (DN 32, p. 11). In addition to providing pain medication, prison medical staff also reviewed Mr. Dahms' psychiatric state, (DN 32, p. 4), treated the incision cite when Plaintiff complained of itching (DN 32, p. 6), transferred Plaintiff to a prison facility that provided physical therapy (DN 32, p. 7), provided Plaintiff with a wheelchair, (DN 32, p. 26), provided Plaintiff with a back brace, (DN 32, p. 28), and responded to each of Plaintiff's health grievances (DN 30-2, p. 20-83). Prison officials also transported Defendant to UKMC for follow-up visits on two occasions to see three non-prison medical providers. (DN 32, p. 45–44). Each of these actions demonstrate a consistent ability and willingness by prison staff, including Amos and Ramey, to provide relief related to Mr. Dahms' back injury.

Second, there is no indication that any part of the grievance process was "opaque" to Mr. Dahms. According to the record before the Court, Mr. Dahms filed at least eight grievances between November 27, 2017 and January 19, 2018. (DN 32, p. 45–44). These grievances range from the alleged loss of his Nintendo DS (prison staff located the device and returned it to

Plaintiff), (DN 30-2, p. 3–19), to a complaint about unauthorized medical charges (prison staff identified erroneous charges and reimbursed Plaintiff's account), (DN 30-2, p. 57–58). Based on this record, Mr. Dahms understood the grievance process well and took advantage of it on numerous occasions—even if he occasionally disagreed with the outcome.

Third, there is no evidence that prison officers "thwarted" Mr. Dahms from taking advantage of the grievance process. Prison officials never prevented Mr. Dahms from filing a grievance, never stopped him from filing an appeal, and never barred him from seeking a final review from the Department of Corrections Medical Director's Office. (DN 30-2, p. 1–91). Far from thwarting his grievances, prison officials responded with an informal resolution to each grievance, assembled a grievance committee to reply to each appeal, and elevated all of Dahms' final medical appeals to the medical director for disposition. *Id*. Although prison officials may not have responded to each of his grievances as quickly as Plaintiff would have liked, this is no excuse for Dahms' failure to exhaust available remedies prior to filing suit.

Finally, Mr. Dahms does not qualify for exemption from the administrative exhaustion requirement of the PLRA based on the filing date of his amended complaint. In *Mattox v. Edelman*, the Sixth Circuit held that, in a narrow set of circumstances, a plaintiff may add a § 1983 claim through an amended complaint, even if the administrative remedies for the new claim were not exhausted at the time of the original complaint's filing. *Mattox,* 851 F.3d at 595. In *Mattox*, the prisoner plaintiff filed suit based on claims for which he had properly exhausted his administrative remedies. *Id.* at 590. Later, the plaintiff sought leave to amend his complaint to add new claims against additional defendants—claims for which he had not exhausted his administrative remedies at the time he filed his original complaint. *Id*. The magistrate judge determined the plaintiff's newly added complaints were ineffective because the plaintiff did not exhaust his administrative

8

remedies prior to the filing the original complaint. *Id*. at 589. On appeal, the Sixth Circuit overruled the district court, holding that "Rule 15 [of the Federal Rules of Civil Procedure] permits a prisoner to amend his complaint to add *new claims* that have only been exhausted after the commencement of the lawsuit." (*Id.* at 592) (emphasis added). In short, the court permitted the plaintiff's suit to survive summary judgment because he had exhausted his administrative remedies for at least *some* of the claims within the original complaint before he filed his original complaint. The same cannot be said for Mr. Dahms.

In contrast to the plaintiff in *Mattox*, Dahms did not exhaust his administrative remedies for *any* of the claims in his original complaint before filing suit, (DN 30-2, p. 20–83). Furthermore, even if this Court looked to the filing date of Dahms' amended complaint as the benchmark for the PLRA's exhaustion requirement, his suit was still premature because Dahms did not exhaust Grievance 17-1154 until June 14, 2018—28 days *after* filing his amended complaint. Finally, the Sixth Circuit's holding in *Mattox* does not apply to Mr. Dahms' case because this Court only permitted the filing of an amended complaint so that Plaintiff could clarify his existing claims, not so that Plaintiff could add new claims. In *Mattox*, the court permitted the plaintiff to file an amended complaint "to add claims against additional defendants." In the instant case, this Court permitted Dahms to file an amended complaint because it was "unable to determine what actions Plaintiff alleges each Defendant took or failed to take or what type of claim he seeks to bring against each Defendant." In its order, the Court explicitly stated that the "amended complaint [would] **supersede (*i.e.*, replace)** the original complaint." (DN 6, p. 2) (emphasis in original). In other words, this Court granted Dahms leave to clarify his original claims, not to provide additional time for Dahms to exhaust administrative remedies—something he should have done before filing suit on January 30, 2018. Accordingly, the effective filing date of the amended complaint relates

back to the original filing date—January 30, 2018. Because Plaintiff failed to exhaust his administrative remedies before filing his original complaint, his motion for summary judgment will be denied.

### 4. Plaintiff's hypothetical due date test

Defendant requests that this Court create a new exception to the administrative exhaustion requirement of the PLRA. Dahms expressly concedes in his Response to Defendants' motion for summary judgment that he did not exhaust his administrative remedies prior to filing suit. (DN 43, p. 2) ("The fact is that if Kentucky State Reformatory would have done their job appropriately then the plaintiff's grievances would have been heard on time and administrative remedies *would have* been properly exhausted.") (emphasis added). Despite acknowledging that he filed his original complaint before grievances relevant to his § 1983 claim had been exhausted, Dahms asks the Court to "honor those supposed dates to which the grievance should have been heard." (DN 43, p. 4). In his response to Defendants' motion for summary judgment, Plaintiff claims to have "provided the dates to which the grievance committee should review" his grievances. (DN 43, p. 4). Plaintiff concludes that "since the Grievance Committee was late and seen and heard the grievances in a untimely manner is why the plaintiff should be awarded summary judgment." *Id*. However, even applying Dahms' proposed standard—evaluating the PLRA's exhaustion requirement according to when grievances "should have been heard"—his complaint was still premature.

Kentucky's Corrections Policies and Procedures 14.6 (CPP 14.6) outlines the standard procedure for the healthcare grievance process within the state prison system. First, a prisoner must file a healthcare grievance about a specific incident or specific health care decision. (*Id*. at II.K.1.a). After receiving the grievance, the CPP states that the responding medical authority shall

issue an "informal response" within 15 business days. (*Id*. at II.K.1.b). Second, if the prisoner appeals the medical authority's informal response, a Health Care Grievance Committee shall meet and respond within 15 business days. (*Id*. at II.K.2.d). Third, if the inmate appeals the Committee's decision, "The Medical Director shall issue a decision within fifteen (15) business days of receiving the information…." (*Id*. at II.K.2.f).

Even if the court were to accept Defendant's argument (that the Court should allow premature filing of a complaint if prison staff do not respond by a hypothetical "due date"), Plaintiff did not allow adequate time for exhaustion of his administrative remedies prior to filing suit. For example, Plaintiff claims the "final decision" for Grievance 17-1383, filed on December 5, 2017, was "due" on January 16, 2018. (DN 43, p. 1). However, Dahms' calculation is incorrect because he only allots time for two 15-business-day review periods (not the three required per Corrections Policies and Procedures). Additionally, Mr. Dahm's hypothetical due date fails to take into account the exclusion of holidays. (CPP 14.6 at I) ("'Business days' means 8:00 a.m. to 4:30 p.m., Monday through Friday, excluding holidays."). According to Plaintiff's own hypothetical due date test, he should not have expected final exhaustion of Grievance 17-1383 until February 9, 2018—more than a week *after* Mr. Dahms filed his original complaint. Similarly, this Court calculates that Dahms should not have expected a final exhaustion of Grievance 17-1415 until February 15, 2018; Grievance 18-0048 until February 28, 2018; and Grievance 18-0152 until March 28, 2018. In summary, this Court declines to create a new exception to the PLRA's exhaustion requirement, but even if it did adopt Mr. Dahms' proposed test, we find that Plaintiff failed to exhaust his administrative remedies prior to filing suit.

### 5. Plaintiff's motion to reopen discovery

Plaintiff motions to reopen discovery (styled by Plaintiff as "motion for extension of time") so that he can prove the Grievance Coordinator's office was in a state of moratorium at the time he filed grievances. Plaintiff's motion will be denied because the information he seeks is both irrelevant and moot.

### a. Irrelevance

Mr. Dahms moves this court to reopen discovery so that he can "get a interrogatory from the grievance director at Kentucky State Reformatory explaining that KSR was in a state of moratorium, where they had … no set amount [of time] to answer the grievances." (DN 42, p. 1). Parties may obtain discovery on any matter that is relevant or potentially relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978). "[I]t is well established that the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1240 (6th Cir.1981). As explained in Part III.A.4, *supra*, Plaintiff failed to exhaust his administrative remedies, or even allow adequate time for the exhaustion of remedies, regardless of the existence of any moratorium. Because the information he seeks has no bearing on this case, the information he seeks to obtain through discovery is irrelevant.

### b. Mootness

Furthermore, even if a moratorium were relevant, Plaintiff's motion to reopen discovery is moot. The sole purpose of Plaintiff's motion is to support his claim that prison officials thwarted his ability to exhaust his remedies, thus allowing this Court to reach the merits of his case. (DN

47, p. 3) ("The plaintiff asks the court to graciously honor his exhaustion of administrative remedies and proceed to awarding him summary judgment.").  Because the Court will address the merits of the case, Plaintiff's motion to reopen discovery is moot.  While the Court is within its authority to dismiss this case or grant summary judgment based on Plaintiff's failure to exhaust his administrative remedies, doing so would be an inefficient use of the Court's resources and would not be in the interest of justice.  Dismissing this suit now, three months after the last of Mr. Dahms administrative appeals was resolved, would be an empty gesture because the Court would simply permit Mr. Dahms to re-file his case.  Recognizing that "the law requires no one to do a vain or useless thing," we will now address the merits of Mr. Dahms' complaint, and his motion to reopen discovery will be denied. *Fine v. CSX Transportation, Inc.*, 229 F.3d 1151 (6th Cir. 2000) *(citing* Cohen v. Public Hous. Admin., *257 F.2d 73, 76 (5th Cir.1958)).

**B. The merits of Plaintiff's § 1983 claim**

**1. Legal Standard**

A party moving for summary judgment must demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.*  In undertaking this analysis, the Court must view the evidence in a light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The party moving for summary judgment bears the burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). They can meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the ... presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

To sustain his cause of action under § 1983 for a failure to provide medical treatment, Dahms must demonstrate that Amos and Ramey "acted with 'deliberate indifference to serious medical needs.'" *Watkins v. City of Battle Creek,* 273 F.3d 682, 685–86 (6th Cir. 2001) (quoting *Estelle v. Gamble,* 429 U.S. 97,104 (1976)). Courts employ a two-prong test to assess such claims. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

First, the Court must "determine whether the plaintiff had a sufficiently serious medical need under the objective prong." *Burgess v. Fischer,* 735 F.3d 462, 476 (6th Cir. 2013) (citing *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008). "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Id.* (citing *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 897 (6th Cir. 2004)).

Second, the Court must determine "whether the defendant had a sufficiently culpable state of mind in denying medical care under the subjective prong." *Id.* (citations omitted). "To satisfy

the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001) (citations omitted). "The requirement that the doctor has subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976)). "There must be a showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Where the plaintiff has received some medical treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* (citing *Westlake v. Lucas,* 537 F.2d 857 (6th Cir.1976)).

### 2. Analysis

The medical record demonstrates, and Defendants do not dispute, that Mr. Dahms had a "serious medical need." (*See generally* DN 30) (documenting Dahms' medical appointments following surgery). With no genuine dispute over the objective prong of Plaintiff's Eighth Amendment claim, the remaining question before the Court is whether Defendants Amos and Ramey demonstrated a deliberate indifference to Plaintiff's serious medical need. The Court finds that the facts alleged by Plaintiff fail to demonstrate such a deliberate indifference.

Plaintiff states that "the medical records clearly show that discharge conditions clearly state, Plaintiff is supposed to be prescribed those exact medications. The pre-operation medication prescribed could not be sufficient for post-operation thus making the defendants have engaged in conduct that was deliberately indifferent to plaintiff's serious medical need…." (DN 27, p. 2).

Although Defendants did not provide Mr. Dahms with the exact medications that Dr. Castellanos had prescribed, Plaintiff provides no support for his assertion that "the pre-operation medication prescribed could not be sufficient for post-operation." Furthermore, Plaintiff fails to explain how the substitution of one medication for another demonstrates "deliberate indifference" to his serious medical needs. Plaintiff alleges a disagreement with the prison staff's treatment plan, not a deliberate indifference to his pain; such a disagreement does not rise to an Eighth Amendment claim. *See Hix v. Tennessee Dept. of Corrections,* 196 Fed.Appx. 350 (6th Cir. 2006) ("At most, [plaintiff's] factual allegations might support a claim for medical malpractice, which does not take on constitutional proportions simply because [plaintiff] is incarcerated. In reality, his factual allegations established nothing more than a mere difference of opinion with the doctors' diagnoses and prescribed treatment."); *Kirkham v. Wilkinson,* 101 Fed.Appx. 628 (6th Cir. 2004) (citations omitted) ("[A] difference in opinion between a prisoner and the medical staff about treatment does not state a cause of action. This court is reluctant to second-guess medical judgments where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment.); *Plunkett v. United States,* 67 F.3d 300 (6th Cir. 1995) (citing *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976)) ("A difference of opinion between a prisoner and a doctor over diagnosis or treatment does not state an Eighth Amendment claim of deliberate indifference to a serious medical need."). To the extent Dahms argues his pain medication is inadequate, the inadequacy of pain medication is insufficient to establish deliberate indifference. *See Thomas v. Coble*, 55 F.App'x 748, 749 (6th Cir. 2003); *Rochell v. CMS*, No. 4:05CV268, 2006 U.S. Dist. LEXIS 37943, at 10 (N.D. Miss. April 10, 2006) ("The constitution does not . . . guarantee pain-free medical treatment . . . While the plaintiff might have preferred stronger medication, his mere disagreement with his medical treatment does not state a constitutional claim.").

Contrary to Plaintiff's claims, the record demonstrates that Defendants made significant efforts to address Mr. Dahms' medical needs. After his back surgery, prison officials transferred Mr. Dahms to KSR so that he could complete the physical therapy recommended by his surgeon. (DN 32, p. 24–28). Licensed medical professionals, including the medical director from the Department of Corrections medical director's office, responded to every one of Mr. Dahms' complaints and appeals. (DN 30-2, p. 20–83). The fact that Defendants provided adequate medical attention is supported by documentation from non-defendant medical professionals who evaluated Mr. Dahms after his surgery, noted the pain medications he was receiving, and did not recommend changes to his prescriptions. For example, on October 9, 2017, at Plaintiff's first post-operative follow-up visit at UKMC, Paula Coffman, APRN, confirmed that Plaintiff was receiving the prescription medications tramadol and gabapentin for pain. (DN 32, p. 39). Nurse Coffman also noted she was "pleased with [Plaintiff's] progress postoperatively" and "encouraged [Dahms] that his symptoms should improve with time." (*Id*. at 40). On November 30, 2017, in response to Mr. Dahms' Grievance 17-1154, Dr. Kemen (the then-Assistant Regional Medical Director) concurred that tramadol and gabapentin were appropriate post-surgery treatment, and that Dahms' "pain was adequately controlled" at the time of his follow-up visit. (DN 34-1, p. 77). On December 1, 2017, prison officials referred Dahms to UKMC for a second follow-up visit—this time with Dr. Raul Castellanos. (*Id*. at 34–36). Dr. Castellanos is the same surgeon who performed Mr. Dahms operation and prescribed him post-operation medications, the denial of which serve as the basis of Mr. Dahms' complaint. (*Id*.). Doctor Castellanos confirmed Plaintiff was receiving the prescription medications tramadol and gabapentin for pain. (*Id*. at 34). Doctor Castellanos noted that Dahms was "making progress slowly," said that he was "overall doing better than what it was

preoperatively," and did not recommend changing the prescriptions that were then being provided by Amos and Ramey.  (*Id*. at 35).

In sum, Plaintiff's medical records document that Defendants provided continuous medical treatment before and after his back surgery, which included the provision of prescription pain medications (albeit not those prescribed by Dr. Castellanos).  Plaintiff therefore fails to demonstrate the deliberate indifference required to constitute an Eighth Amendment violation.  Accordingly, Plaintiff's request for summary judgment on those claims will be denied.  *See Daniel v. Harper*, No. 5:17-CV-19-TBR, 2017 WL 6522090, at *8 (W.D. Ky. Dec. 19, 2017) (granting summary judgment to defendants because plaintiff's "principle problem" with defendants was the "precise manner in which they provided medical care to him with respect to his back troubles because the medication being provided to him . . . was not adequate in Plaintiff's view"); *Jones v. Pancake*, No. 3:06CVP188-H, 2009 WL 481899, at *4 (W.D. Ky. Feb. 25, 2009) ("While Plaintiff might have desired the pain medication to be continued for a longer period or might have deemed more extensive tests necessary, this is not a case where all treatment was withheld from Plaintiff. Although not as extensive as he would have liked, Plaintiff did receive treatment . . . [and] has not established a deliberate indifference claim against Dr. Hiland.").

## V.  State law claims

We now turn to Mr. Dahms' state law claims—intentional infliction of emotional distress and negligence.  Defendants have moved for summary judgment on Plaintiff's state law claims, asserting that Plaintiff did not exhaust his administrative prior to filing suit.  Kentucky Revised Statute § 454.415 requires exhaustion of administrative remedies prior to seeking judicial review of a "conditions-of-confinement issue."  Dahms challenges a condition of his confinement—his denial of access to medications prescribed by a non-prison physician.  Dahms did not exhaust his

administrative remedies prior to filing his original (or amended) complaint. *See* Part III.A *supra*. Because Dahms challenges a condition of his confinement, it was necessary that he first exhaust his administrative remedies before filing a judicial action. While the PLRA's exhaustion requirement may be excused if prison officials effectively made the grievance process unavailable to prisoners, "there is no similar language in KRS § 454.415. Instead, it requires exhaustion of 'administrative remedies as set forth in the policies and procedures of the Department of Corrections[.]'" *Morgan v. Kentucky*, No. 3:17-CV-00474-JHM, 2018 WL 715468, at *5 (W.D. Ky. Feb. 5, 2018). As there is no exemption from KRS' administrative exhaustion requirement, the Court finds that Mr. Dahms filed his complaint prematurely.

Despite Mr. Dahms' premature filing, the Court finds that dismissal would not be in the interest of justice or an efficient use of judicial resources. For the same reasons explained in Part III.A.5, *supra*, we will now address the merits of Plaintiff's state law claims.

### A. Intentional infliction of Emotional distress

Defendants are entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress ("IIED"). In Kentucky, IIED is a "gap-filler" tort. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298–99 (Ky. Ct. App. 1993). This means that IIED is not ordinarily a valid cause of action if the alleged conduct also gives rise to a claim for another tort through which emotional distress damages are available. *Id.* Thus, the general rule is that "an IIED claim cannot be pled by itself, in tandem with another tort, or in the alternative as long as some other tort with adequate relief fits the facts." *Johnson v. Kentucky-Cty. of Butler*, No. 1:12CV-37-JHM, 2014 WL 4129497, at *11 (W.D. Ky. Aug. 18, 2014) (Citing *Martin v. Crall*, 2007 WL 2083682, at *4–5 (W. D. Ky. July 18, 2007) (dismissing IIED claim on summary judgment where plaintiff had alleged a § 1983 claim for deliberate indifference to a serious medical need, which allowed

damages for emotional distress)).  Parties may overcome this general rule only in circumstances where the alleged "actions or contact is intended only to cause extreme emotional distress in the victim." *Brewer v. Hillard*, 15 S.W.3d 1, *7 (Ky. Ct. App. 2000).

Here, Defendants are entitled to summary judgment on Defendant's IIED claim because the Constitutional tort of deliberate indifference and the state tort of negligence provide an alternate means for the recovery of emotional damages.  Furthermore, Defendants are entitled to summary judgment on Plaintiff's IIED claim because Dahms has presented no evidence that Defendants' denied Plaintiff access to the medications prescribed by Dr. Castellanos "only" to cause Plaintiff extreme emotional distress.  *See Rigazio*, 853 S.W.2d at 299 (affirming dismissal of IIED claim because there was "no evidence from which it could be inferred that the [defendant] intended only to invade [the plaintiff's] interest in freedom from emotional distress").

Moreover, even if Dahms' IIED claim could stand alone, Plaintiff fails to plead facts necessary to survive summary judgment.  To prevail on a claim of IIED, a claimant must prove the following elements: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the  generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe.  *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65, 43 4 Ky. L. Summary 26 (Ky. 1996) (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)).  At a minimum, Dahms' claim fails because he has not produced evidence sufficient to prove Defendants conduct was "outrageous."  *See Rigazio*, 853 S.W.2d at 299 (affirming dismissal of IIED claim because the plaintiff presented "no evidence whatsoever to raise an inference that the [defendants] engaged in any extreme and outrageous conduct intentionally or recklessly inflicting emotional distress on any of the appellants").

Drawing all unresolved issues of state law in favor of the Plaintiff, the Court cannot find that there is even a reasonable basis for believing that Defendants' conduct could be "outrageous" enough for Defendants to be found liable under Kentucky law. In *Humana of Ky., Inc. v. Seitz*, the Kentucky Supreme Court addressed whether the conduct of hospital staff was sufficiently outrageous to rise to the level of IIED tort. *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1 (Ky. 1990). In that case, a patient who had unexpectedly delivered a stillborn baby was told to "shut up" because she was disturbing other patients. *Id*. at 3. Nurses later told the mother that they would "dispose" of the baby "right [there] at the hospital." *Id*. The Kentucky Supreme Court found that although "a little more patience and TLC would have been desirable," the conduct fell short of state's standard for intentional infliction of emotional distress. *Id*. Similarly, while Mr. Dahms may have preferred that Defendants acted more tactfully or compassionately in their care (for example, in Grievance 18-0152, Plaintiff expressed anger that at Dr. Amos' statement that Dahms' nerve pain would have to "work itself out"), their actions fall short of the state's standard for "outrageous" conduct. Accordingly, the Court will grant summary judgment in Defendant's favor on Plaintiff's IIED claim.

## B. Negligence

Defendants are entitled to summary judgment on Plaintiff's negligence because Dahms presented no expert medical testimony. "It is an accepted principle that in most medical negligence cases, proof of causation requires the testimony of an expert witness because the nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony." *Baylis v. Lourdes Hosp., Inc.*., 805 S.W.2d 122, 124 (Ky. 1991).

As pled by Plaintiff, this is a medical negligence case that requires expert testimony. Plaintiff alleges that "The pre-operation medication prescribed could not be sufficient for post-operation," and that Defendants "violate[d] the applicable duty of care" when they "improperly withheld medical care" and "ignor[ed] medication prescribed by surgeons." (DN 27, p. 2). Therefore, negligence boils down to whether the alternate treatment provided by Defendants was a breach of the standard of care. Jurors are ill equipped to determine whether the prescription of tramadol and duloxetine (as opposed to oxycodone and gabapentin) to treat a transforaminal lumbar interbody fusion violates the standard of care for doctors and nurses. Because Plaintiff has not provided an expert to aid the jury in answering those questions, his negligence claim cannot survive summary judgment.

Defendants' are also entitled to summary judgment because Plaintiff fails to provide evidence for his assertion that Defendants had a duty to provide the medications prescribed by Dr. Castellanos. In Kentucky, the plaintiff must present evidence of the recognized elements of a common law negligence claim: (1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012). In his complaint, and throughout his grievances, Plaintiff baldly asserts that Defendants were obliged to provide the medication prescribed by surgeon Dr. Castellanos. However, Plaintiff cites no case law, and this Court finds none, that recognizes the duty of prison medical staff to provide exact medications prescribed by non-prison physicians. "As in all negligence actions, the burden is on the plaintiff" to prove Defendant had a duty to the plaintiff that was violated. *Dean v. Bondurant*, No. 2004-CA-001345-MR, 2005 WL 2467768, at *5 (Ky. Ct. App. Oct. 7, 2005). As Plaintiff has failed to

establish that Defendants had a duty to provide the medications prescribed by Dr. Castellanos, Defendants are entitled to summary judgment.

## VI. Conclusion

Motions having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the Plaintiff's Motion for Summary Judgment, (DN 27), is **DENIED**; Defendants' Motion for Summary Judgment, (DN 30), is **GRANTED;** and Plaintiff's motion to reopen discovery, (DN 42), is **DENIED**.

**Charles R. Simpson III, Senior Judge**
**United States District Court**

September 19, 2019